**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

SHALOM FELLOWSHIP INTERNATIONAL

     Plaintiff,

v.

NATIONWIDE MUTUAL INSURANCE
COMPANY,

     Defendant.
_____/

Case No. 17-12831

Honorable Nancy G. Edmunds

**ORDER AND OPINION DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT AND
DENYING PLAINTIFF'S MOTIONS FOR SUMMARY JUDGMENT [26] [31] [40]**

This insurance dispute centers on whether Plaintiff Shalom Fellowship International timely submitted a signed and sworn proof of loss form to Defendant Nationwide Mutual Insurance Company in accordance with the terms of its insurance policy. Pending before the Court are the parties' competing motions for summary judgment on this issue: Defendant's motion for summary judgment (ECF No. 26), Plaintiff's counter-motion for summary judgment (ECF No. 31), and Plaintiff's motion for summary judgment (ECF No. 40). On November 28, 2018, the Court held a hearing in connection with the motions. For the reasons stated herein, the Court **DENIES** all of the summary judgment motions.

**I.**    **Background**

This matter stems from a claimed water loss alleged to have occurred on February 17, 2016 at a condominium owned by plaintiff Shalom Fellowship International. (Def.'s Ex. 1.) Shalom Fellowship is a non-profit church. (Pl.'s Mot. 2.) Prior to the incident the

1

condominium was used as housing for Gertrude Stacks, Plaintiff's principal and senior pastor. (*Id.*)

### A. The policy and scope of coverage

Plaintiff insured the condo through a commercial property insurance policy issued by Nationwide (the "Nationwide Policy"). (Def.'s Ex. 2.) The Nationwide Policy, however, does not provide coverage for the entire condo. An insurance policy procured by the condominium association covers any loss or damage to the original specifications and buildout of the condo. (Def.'s Mot. 4–5.) According to Nationwide, the Nationwide Policy only covers loss or damage to improvements or betterments made to the condo as well as any personal property of Plaintiff. (Def.'s Resp. 2.) Nationwide contends that it is not responsible for any damage to the first floor and living area of the condo. (*Id.* 2–3.) Although the parties somewhat dispute the exact scope of coverage in the context of this incident, the parties generally agree that the Nationwide Policy covers damage to improvements and personal property of the Plaintiff in the basement of the condo. (*See id.*) Ultimately, however, the parties briefing suggests that there are questions as to the scope of Nationwide's liability that are beyond the issues presented here on summary judgment. These liability and coverage related questions include: (1) whether certain property constitutes an improvement or part of the original buildout (which is covered by the Condo Association's policy); (2) whether the personal living expenses of Ms. Stacks are covered by the Nationwide Policy; and (3) whether Nationwide has already paid all amounts owed.

### B. Events leading up to this dispute

After the incident, Nationwide prepared its own estimates and made payments for its portion of the claim consistent with that estimate. (Def.'s Resp. 3.) Plaintiff admits that

2

Nationwide has paid at least $78,454.18 for its claim. (Def.'s Ex. 6.)

Although not relevant to their motions, the parties devote significant briefing to chronicling the hurdles encountered during the initial assessment and remediation stages of Plaintiff's claim. Nationwide asserts that Stacks and Plaintiff caused delays in the process of attempting to evaluate, remediate, and repair the damage to the condo. (*See, e.g.,* Def.'s Resp. 4–5.) And Plaintiff contends that Nationwide's adjuster, Joseph Milfort, was the source of any problems and delays experienced in completing the claims process. (*See, e.g.,* Pl.'s Mot. 3–4.)

Notwithstanding these alleged issues, on June 10, 2016, after much back and forth with Plaintiff's contractors, Nationwide closed its file for Plaintiff's claim. (Def.'s Resp. 9.) At that time, Nationwide believed that it had satisfied all obligations under the Nationwide Policy. For this reason, Nationwide maintains it was surprised when it received a notice from Plaintiff on August 4, 2016 that Plaintiff hired William Roberts, a public adjuster, to evaluate and assess the damage to the condo. (Def.'s Resp. 9–10.)

The summary judgment evidence reflects that, upon his retention, Roberts began attempting to work with Nationwide and the Condo Association's insurer to complete the claims process. (*See, e.g.*, Def.'s Ex. 8.). On October 3, 2016. Roberts e-mails Milfort and the Condo Association's insurer a forty-five page estimate of the damage to the condo. (Def.'s Ex. 8.) Roberts states in his e-mail that parties are very far apart with respect to their estimates. (*Id.*) He requests that the parties meet at the condo to go over his estimate and discuss coverage. (*Id.*)

On October 5, 2016, Milfort e-mails Roberts requesting a revised estimate that segregates the portion of the loss attributable to Nationwide alone. (*Id.*) Milfort also

3

informs Roberts that his estimate includes losses personally incurred by Stacks and that those are not covered by the Nationwide Policy. (*Id.*)

On October 13, 2016, Roberts informs Milfort that he is meeting with the Condo Association's insurer at the condo on October 18, 2016 to discuss coverage and requests Milfort's or his supervisor's attendance at the meeting. (*Id.*) In response, on October 14, 2016, Nationwide e-mails Plaintiff and Roberts a letter officially requesting a sworn statement in proof of loss be completed and returned by December 14, 2016. (*Id.*) Milfort's e-mail provides as follows:

> Please see the attached documents sent to our mutual customer for a Sworn Statement in Proof of Loss as well as a cover letter for the proof request. As I mentioned previously this claim was closed. Per your recent communication we have reopened the claim. According to our rights under the policy we are requesting this proof be completed in full with all documentation that supports the claim attached no later than 12/14/2016. Once we receive the submitted proof we will review and respond in a timely manner. Until we have received the completed proof, Nationwide will not make any additional inspections or considerations for payment under the claim. Please make sure that all submitted documentation is related to the claim Shalom Fellowship has with Nationwide, and not another insurance carrier.

(*Id.*) In a follow-up email to Roberts dated October 14, 2016, Milfort declines to attend the October 18, 2016 walkthrough of the condo and reiterates Nationwide's demand for a sworn statement in proof of loss:

> Regarding your question on ALE, I again point you to the letter we sent addressing this matter. The Sworn Proof of Loss with supporting documentation would be the quickest and most efficient way to move the claim forward and support any claims you are making. We need to understand exactly what is being claimed this late in the claim. Once we have this information, we can review it and communicate our decision on the claim for any further payments.

(Def.'s Ex. 10.) The proof of loss instructions set November 14, 2016 as the deadline for Plaintiff to request an extension of time to submit the form. (Def.'s Ex. 9.)

On December 1, 2016, Nationwide sends a reminder letter to Plaintiff regarding the need for the sworn statement in proof of loss with supporting documentation by December 14, 2016. (Def.'s Ex. 11). On December 7, 2016, Nationwide receives a signed and sworn proof of loss form from Plaintiff. (Def.'s Ex. 12.) The form was faxed to Nationwide by Roberts. (*Id.*) The summary judgment evidence reflects that Roberts completed the form on behalf of Plaintiff and obtained Plaintiff's principal's signature before she left town on December 5, 2016.

Nationwide claims this proof of loss form was incomplete and "without any support whatsoever." Nationwide identifies a number of deficiencies in the form. For example, in response to the request in paragraph 6 to List the Whole Value of the Loss and Damage, Plaintiff states: "$250,306.91 for dwelling + $13,960.22 for water & sewer + property, both personal and business that is TBD + ALE that is TBD + mitigation charges." As Nationwide points out, the phrase "TBD" does not provide the insurer with specific information about the claim. And this response also includes items that were either already paid by Nationwide or not covered by the Nationwide Policy. Other issues with the form identified by Nationwide include:

> For Building Coverage Loss Claim, the response was "See enclosed estimates". N o estimates were actually attached. However, Plaintiff's public adjuster testified that he believed he sent a copy of the supporting documentation via e-mail to Milfort around the same time that he sent the proof of loss form.
>
> For Personal Property, Contents, Business Personal Property, Farm Contents, Farm Equipment Claimed, the response was "Still compiling inventory". No information was ever provided. However, Plaintiff now argues that it is not actually seeking coverage for items in this category.
>
> For Additional Living Expense, Loss of Rental Value, Business Interruption Loss Claim, the response was "See attached receipts. This will be ongoing until completion of repairs." No receipts were attached to the form. However,

5

Plaintiff claims that it provided evidence to support this response both prior to and after submitting the form.

For Any Other Damages Being Claimed, the response was "utilities, demolition and any other item pertained to damages and rebuild". As with all of the other responses, nothing was attached. However, Plaintiff claims it subsequently submitted this information.

In response to Nationwide's assertion that the proof of loss form was incomplete, Plaintiff argues that the form included "substantial data" regarding its loss and that the majority of the line items on the form were completed. Plaintiff also argues that its public adjuster submitted detailed estimates of the loss before the December 14, 2016 deadline and therefore Plaintiff satisfied any obligation to provide detailed documentary support for its claim.

On December 7, 2016, after receiving Plaintiff's proof of loss form, Milfort e-mails his supervisor about the deficiencies in the form. (Pl.'s Ex. 24.) Milfort states that he plans to reject the proof of loss because it is incomplete, missing attachments, and says "TBD" in a number of areas. (*Id.*) Milfort also states that he does not intend to give Plaintiff additional time to submit a new proof of loss. (*Id.*)

On December 8, 2016, Nationwide formally rejects the proof of loss because it was incomplete and lacked supporting documentation. (Def.'s Ex. 14.) Nationwide again asks Plaintiff provide a complete sworn statement in proof of loss by December 14, 2016. (*Id.*) Plaintiff argues in its briefing that it was entitled to an additional sixty days to submit a new form—not the additional six days allowed by Nationwide. The instructions accompanying the proof of loss form state "If you return the Sworn Statement in Proof of Loss and it's not complete, we'll return it to you for you to complete and return to us by 12/14/16." Neither the Nationwide Policy, nor the proof of loss form, provide any detail

6

explaining the rejection process, describing what happens upon rejection of a proof of loss, or instructing the insured of its rights.

Less than three hours after receiving Nationwide's letter rejecting Plaintiff's proof of loss, Roberts e-mails Milfort a loss estimate for the entire condo. (Pl.'s Ex. 21.) Roberts' e-mail provides:

> Joe,
>
> Here is supporting estimate for the loss. If you need further support for the POL, inform us of what exactly you need. We have submitted a completed POL, in accordance with the policy and would like to settle this claim. Your attention to this matter is appreciated.
> Respectfully Bill Roberts

Roberts' estimate reflected a significant amount of repairs remaining to be completed at the condo. (*See* Pl.'s Ex. 3.) However, the estimate did not specify the items Plaintiff and Roberts believed Nationwide was responsible for providing coverage. (*Id.*) The estimate similarly did not identify the items Plaintiff and Roberts believed the Condo Association's insurer was responsible for providing coverage. (*Id.*) The estimate did not acknowledge which items had already been afforded coverage by either Nationwide or the Condo Association's insurer and which items remained unpaid. (*Id.*) And the estimate was not accompanied by sworn statement or new proof of loss form. (*Id.*)

On December 9, 2016, Milfort informs Roberts that the submitted estimate is defective because it included items that were for the other carrier as well as items that had already been paid by Nationwide. (Def.'s Ex. 15.) Milfort tells Roberts that the additional documentation is improper under the terms of the policy and not accompanied by a sworn proof of loss as required by the Nationwide Policy. (*Id.*)

On December 13, 2016 Roberts e-mails Milfort a revised estimate that he

7

describes as covering the "lower level items, and the items I believe Nationwide is responsible for." (Pl.'s Ex. 10.) With respect to the proof of loss form, Roberts says "If you need a new proof of loss please send a new one over and I will need more time to complete." (*Id.*) On December 15, 2016, Roberts e-mails Milfort requesting confirmation that Milfort received the revised estimate. (*Id.*) Roberts also asks if Nationwide needs another proof of loss form from Plaintiff. (*Id.*) On December 19, 2016, Roberts e-mails Milfort again to see if Milfort wants to meet at the condo and whether Nationwide is satisfied with the revised estimate. (*Id.*) Milfort does not respond to any of these e-mails.

On December 21, 2016 Nationwide sends a letter to Plaintiff denying further coverage for the loss. (Def.'s Ex. 16.) Nationwide states that Plaintiff failed to provide a proof of loss as required by the Nationwide Policy and therefore Nationwide was not required to extend coverage beyond the amounts it already paid. (*Id.*) In the e-mail transmitting this letter, Milfort informs Roberts that the e-mails Milfort receives from Roberts are "blank with an attachment that has basic text in it." (Pl.'s Ex. 10.) It is thus unclear whether Milfort actually received the content of Robert's December 13–19 e-mails.

### C. The proof of loss form

The Nationwide Policy contains a requirement for the insured to provide a sworn statement in proof of loss containing the information requested within 60 days of its request:

> **3.     Duties In The Event Of Loss Or Damage**
> a.     You must see that the following are done in the event of loss or damage to Covered Property:
> \* \* \*
> (7) Send us a signed, sworn proof of loss containing the information we request to investigate the claim. You must do this within

> 60 days after our request. We will supply you
> with the necessary forms. [

(Def.'s Ex. 17.) The Nationwide Policy further provides that no legal action may be brought against Nationwide unless there has been full compliance with the terms of the policy:

> **D.    LEGAL ACTION AGAINST US**
> No one may bring a legal action against us under this Coverage Part unless:
> 1. There has been full compliance with all of the terms of this Coverage Part; and
> 2. The action is brought within 2 years after the date on which the direct physical loss or damage occurred.

(Def.'s Ex. 4.) According to Nationwide, the failure of an insured to timely submit a completed, signed, and sworn proof of loss containing all of the information requested by Nationwide precludes Plaintiff's recovery under the Nationwide Policy.

**Procedural background**

On July 27, 2017 Plaintiff initiated this lawsuit in state court alleging claims for breach of the Nationwide Policy based on Nationwide's declining of further coverage for Plaintiff's losses. (ECF No. 1.) Plaintiff also seeks an appraisal under Mich. Comp. Laws § 500.2833. (*Id.*) On August 28, 2017, Defendant removed the case to this Court. (*Id.*) Simultaneously with its notice of removal Defendant filed its answer, affirmative defenses, and jury demand. (ECF No. 2.)

On June 16, 2018 Nationwide moved for summary judgment on Plaintiff's claims. (ECF No. 26.) Nationwide contends that it is entitled to judgment as a matter of law because Plaintiff failed to timely submit a signed sworn proof of loss form in accordance with the terms of the Nationwide Policy. Nationwide argues that the December 7, 2016 proof of loss form does not satisfy the policy's proof of loss requirement because it was

incomplete, not supported by proper documentation, and rejected by Nationwide. Nationwide contends that Plaintiff is not entitled to coverage beyond the amounts already paid because Plaintiff failed to submit a complete, signed, and sworn proof of loss form by the December 14, 2016 deadline.

On July 09, 2018, Plaintiff filed a response to Nationwide's motion together with its own cross-motion for summary judgment. (ECF No. 31.) On September 17, 2018, Plaintiff filed an independent motion for summary judgment. (ECF No. 40.) The crux of Plaintiff's response and motion is the inverse of Nationwide's motion: Plaintiff argues that the undisputed evidence establishes that it complied, or at least substantially complied, with the policy's proof of loss requirement and therefore it is entitled to judgment as a matter of law. Plaintiff points to the following facts in support of its motion: (1) it timely submitted a signed sworn proof of loss that contained a number of data points about the incident, (2) its public adjuster subsequently submitted estimates and supporting documentation for the proof of loss, and (3) its public adjuster asked for an additional proof of loss form, asked if Nationwide needed any additional information, and asked for additional time to submit a new form, but not response was provided.

The parties' motions have been fully briefed. On November 28, 2018, the Court held a hearing in connection with the motions.

II. **Summary Judgment Standard**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A trial is required only when "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be

resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Bowlers' Alley, Inc. v. Cincinnati Ins. Co.*, 108 F. Supp. 3d 543, 553 (E.D. Mich. 2015).

The fact that the parties filed cross motions for summary judgment does not automatically justify the conclusion that there are no facts in dispute. *Parks v. LaFace Records*, 329 F.3d 437, 444 (6th Cir.2003) ("The fact that the parties have filed cross-motions for summary judgment does not mean, of course, that summary judgment for one side or the other is necessarily appropriate."). Instead, the Court must apply the well-recognized summary judgment standards when deciding such cross motions: the Court "must evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Westfield Ins. Co. v. Tech Dry, Inc.*, 336 F.3d 503, 506 (6th Cir.2003).

Additionally, because this case is before the Court by way of diversity jurisdiction, the Court must apply the substantive law of Michigan. *Erie R.R. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Where an issue of state law has not been decided by the Michigan Supreme Court, the Court will determine how Michigan's Supreme Court would decide the issue were it faced with it. The Court will heed the decisions of Michigan's intermediate appellate courts except where the Court is persuaded that the Michigan Supreme Court would not so decide, and the Court may consider applicable dicta of Michigan's highest court. *Pack v. Damon Corp.,* 434 F.3d 810, 818 (6th Cir.2006).

III.    **Analysis**

Nationwide argues it is entitled to summary judgment on Plaintiff's claim because

the evidence establishes as a matter of law that Plaintiff failed to strictly comply with the policy's proof of loss requirement. Conversely, Plaintiff argues that it is entitled to summary judgment because it did in fact comply with the policy's proof of loss requirement. Plaintiff further argues that even if it did not strictly comply, it substantially complied with the policy's proof of loss requirement, and therefore Nationwide's motion for summary judgment should be denied.

As both parties acknowledge, Michigan law requires strict compliance with an insurance policy's proof of loss requirement. *Telerico v. Nationwide Mut. Fire Ins. Co.*, 529 F. App'x 729, 733–34 (6th Cir. 2013); *Dellar v. Frankenmuth Mut. Ins. Co.,* 173 Mich.App. 138, 145, 433 N.W.2d 380, 383 (1988) ("Clearly, the failure to file a signed and sworn proof of loss within sixty days of the loss bars recovery on a claim without regard to whether the insurer is prejudiced by such failure."). Indeed, Michigan law is well settled that compliance with a proof of loss provision is a mandatory condition precedent to coverage: "Compliance with the requirement in the policy to furnish proof of loss within 60 days is a condition precedent to liability of the insurer." *Fenton v Nat'l Fire Ins Co*, 235 Mich 147, 150; 209 NW 42 (1926). *See also Korn v. Paul Revere Life Ins. Co.,* 382 Fed.Appx. 443, 447 (6th Cir. 2010) ("If so provided in an insurance policy, an insured's obligation to provide proof of loss is a condition precedent to his receipt of benefits.").

However, "Michigan law requires only substantial compliance with the proof of loss requirement." *Shathaia v. Travelers Cas. Ins. Co. of Am.*, 984 F. Supp. 2d 714, 725–26 (E.D. Mich. 2013); *see Korn,* 382 F. App'x at 447; *Westfield Ins. Co. v. Appleton,* 132 Fed.Appx. 567, 570 (6th Cir.2005). "A contract is substantially performed when all the essentials necessary to the full accomplishment of the purposes for which the thing

contracted has been performed with such approximation that a party obtains substantially what is called for by the contract." *Telerico*, 529 F. App'x at 733–34 (quoting *Gibson v. Group Ins. Co.,* 142 Mich.App. 271, 369 N.W.2d 484, 486 (1985)).

In determining whether there has been "substantial compliance" with a policy's proof of loss requirement, Michigan courts consider the three identified policy objectives of the proof of loss: "'(1) allowing the insurer an opportunity to investigate the loss; (2) allowing the insurer to estimate its rights and liabilities; and (3) preventing fraud.'" *Westfield Ins. Co.,* 132 Fed.Appx. at 574–75 (quoting *Wineholt v. Cincinnati Ins. Co.,* 179 F.Supp.2d 742, 752 (W.D.Mich.2001)). The district court advised in *Wineholt* that substantial compliance requires "more than a minimal effort" on the part of the insured. *Id.* Substantial compliance requires that the insured "make a reasonable effort to provide information reasonably within its possession and with a sufficient degree of particularity to allow the insurer to make an informed review of the claim." *Id.*

Generally, the question of whether an insured has substantially complied with a proof of loss requirement is a question of fact not to be decided on summary judgment. *Korn,* 382 Fed.Appx. at 448 (citing *Griswold Properties, LLC v. Lexington Ins. Co.,* 275 Mich.App. 543, 574, 740 N.W.2d 659, 677 (2007)); *Shathaia,* 984 F. Supp. 2d at 725–26 (E.D. Mich. 2013); *Pearson v. Flood Professionals, Inc.*, No. 298359, 2012 WL 205799, at *4–5 (Mich. Ct. App. Jan. 24, 2012). Thus if the Court finds that reasonable fact-finders could disagree as to whether Plaintiff substantially complied with the Nationwide Policy's proof of loss requirement, summary judgment for either party is not proper. *Id*.

In the present case, after receiving an initial estimate from the public adjuster and a request to meet at the condo to discuss coverage issues, Nationwide formally requested

that Plaintiff submit a sworn statement in proof of loss by December 14, 2016. Nationwide refused to proceed with any further investigation of Plaintiff's claim until a signed and sworn proof of loss form was submitted.

In accordance with Nationwide's instructions, Plaintiff's public adjuster timely submitted a proof of loss form that was signed and sworn to by Plaintiff's principal. The proof of loss form included claims for losses that are likely not covered by the Nationwide policy as well as losses for which Nationwide had already extended coverage. The proof of loss form also stated that supporting documentation was attached, but no such documentation was actually attached to the form.

After Nationwide rejected the proof of loss claiming that it was incomplete, Plaintiff's public adjuster provided the referenced supporting documentation. Although this documentation was not submitted simultaneously with a new, signed, and sworn proof of loss form, Plaintiff's public adjuster's e-mail transmitting the documentation expressly references the previously provided proof of loss form. Plaintiff's public adjuster asked Nationwide if it needed any additional information and requested that if Nationwide was going to require a new signed proof of loss that it provide a new form as required by the Nationwide Policy. Plaintiff's public adjuster also requested additional time to submit a new proof of loss if one was to be required. Nationwide did not respond to Plaintiff's public adjuster's inquiries. Instead Nationwide simply declined to extend further coverage for Plaintiff's alleged failure to comply with the Nationwide Policy's proof of loss requirement.

Under this set of facts and circumstances, reasonable minds may disagree about whether Plaintiff substantially performed its duty to submit a sworn statement in proof of

loss in accordance with the terms of the Nationwide Policy. Therefore a genuine issue of material fact exists. *See Jimkoski v. Shupe,* 282 Mich.App 1, 4–5; 763 NW2d 1 (2008); *Pearson*, 2012 WL 205799 at *3–5 (Mich. Ct. App. Jan. 24, 2012).

In contrast to the majority of cases relied upon by Nationwide, Plaintiff did in fact submit a signed and sworn proof of loss form by the December 14, 2016 deadline. *Compare, e.g., Telerico,* 529 Fed Appx at 733–34 (insured failed to satisfy policy's proof of loss requirement even though it timely submitted significant documentation substantiating its claim where no signed or sworn statement was timely submitted to insurer); *Westfield Ins Co*, 132 Fed Appx at 568–69 ("Because the Appletons' failed to complete and timely submit readily available sworn proof of loss statement forms, we find that they did not make a 'reasonable effort' to provide Westfield with all the information 'reasonably within [their] possession.'"); *Williams v. Nationwide Ins. Co.*, No. 12-13904, 2014 WL 2558328, at *4 (E.D. Mich. June 6, 2014) (insurer properly denied coverage because insured's proof of loss form was untimely if submitted at all); *Johnson v. Memberselect Ins. Co.,* No. 302469, 2012 WL 1415114, at *5 (Mich.Ct.App. Apr. 24, 2012) (finding no substantial compliance when the insurance company did not receive any document with the insured's signature). The facts of this case are easily distinguishable from the facts of *Telerico* and *Westfield* because Plaintiff did in fact timely submit a signed and sworn proof of loss form.

But Plaintiff's proof of loss was also initially incomplete. The Court rejects Plaintiff's contention that an estimate attached to and incorporated by reference into a sworn statement in proof of loss is never part of the insured's sworn statement. An insured is equally bound by the documents it attaches to and incorporates into its proof of loss as it

is to the statements it makes on the face of the form. As such, the Court recognizes the dilemma faced by Nationwide in the situation presented here. It is not impossible to imagine a scenario where: an insured submits a proof of loss form vaguely referencing additional documents or estimates in lieu of fully describing the claimed loss on the face of the form; the insured (or its agent) subsequently submits the additional supporting documentation or estimates without a sworn statement by the insured; and then, when a discrepancy arises, the insured attempts to wiggle out from representations made in the separately submitted documents or estimates on the basis that such documents were not part of the insured's sworn statement. Avoiding that situation is one of the identified goals of the proof of loss—to bind the insured to its claimed loss and prevent fraud.

Notwithstanding, the summary judgment evidence shows Plaintiff made an effort to comply with its obligations under the policy. Whether that effort constitutes a reasonable effort is question of fact and cannot be decided by the Court as a matter of law based on the record before it.

## IV. Conclusion

For the above-stated reasons, Defendant's motion for summary judgment is DENIED and Plaintiff's motions for summary judgment are DENIED.

**SO ORDERED.**

        <u>s/Nancy G. Edmunds</u>
        Nancy G. Edmunds
        United States District Judge


Dated:  December 10, 2018

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 10, 2018, by electronic and/or ordinary mail.


        <u>s/Lisa Bartlett</u>
        Case Manager